**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS INC. and CITIGROUP INC.,<br><br>Petitioners,<br><br>v.<br><br>JULIA CARREON,<br><br>Respondents. | Case No. 1:26-cv-00194 |

# RESPONDENT'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

## TABLE OF CONTENTS

**ARGUMENT** ..... 2

**I. All Legal Authority Supports Applying the Transfer Statute to This Case** ..... 2

**II. The Private-Interest Factors Favor Transfer** ..... 5

**III. The Public-Interest Factors Favor Transfer** ..... 6

**IV. After Transfer, Arbitration, if Any, Would be Held in New York, Not Texas** ..... 8

**CONCLUSION** ..... 10

## TABLE OF AUTHORITIES

### CASES

*Bradley v. Bank of America Corp.*,
No. 1:25-cv-6980 (S.D.N.Y. 2025) .......... 2, 4

*Carreon v. Citigroup Inc. et al.*,
No. 1:26-cv-00660 (S.D.N.Y. Jan. 26, 2026) .......... 1, 7

*Diaz-Roa v. Hermes Law, P.C.*,
757 F. Supp. 3d 498 (S.D.N.Y. 2024) .......... 8

*Hoffman v. Parade Publs.*,
15 N.Y.3d 285 (2010) .......... 8

*In re Bozic*,
888 F.3d 1048 (9th Cir. 2018) .......... 5

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) .......... 5, 6

*In re Rolls Royce Corp.*,
775 F.3d 671 (5th Cir. 2014) .......... 6

*Law Offs. of Joseph L. Manson III v. Aoki*,
No. 19-CV-04392, 2020 WL 767466 (S.D.N.Y. Jan. 3, 2020) .......... 3

*Matthews v. Tidewater, Inc.*,
108 F.4th 361 (5th Cir. 2024) .......... 6

*Merida Cap. Partners III LP v. Fernane*,
No. 25-cv-1235, 2025 WL 2531041 (S.D.N.Y. Sept. 3, 2025) .......... 3

*Olivieri v. Stifel, Nicolaus & Co.*,
112 F.4th 74 (2d Cir. 2024) .......... 5

### STATUTES

28 U.S.C. § 1391 .......... 5

28 U.S.C. § 1391(b)(1) .......... 3, 5

28 U.S.C. § 1404(a) .......... 1, 2, 5

28 U.S.C. § 1391(b)(2) .......... 3

42 U.S.C. § 1981 .......... 2

9 U.S.C. § 3 .......... 3, 4

9 U.S.C. § 4 .......... 2, 4

Respondent Julia Carreon has sued her New York-based employer in its headquarters in the Southern District of New York ("SDNY"), raising New York sexual harassment claims based on conduct that occurred in New York.[1] She will show in due course that her sexual harassment case is not arbitrable under the Ending Forced Arbitration Act ("EFAA"), and that Citi is liable to her on the merits. Now is not the time, and Texas is not the place, for either showing.

This Court is determining one simple question: which court should decide whether the first-filed New York claims pending in the SDNY should be arbitrated—the SDNY or the Western District of Texas, where Citi wrongly claims any arbitration must take place. Citi's response attempts to drag this Court deep into the merits of the lawsuit and Petition, neither of which is at issue. Instead, the public- and private-interest factors of 28 U.S.C. § 1404(a) guide the analysis, and both favor transfer. The private factors support transfer of this New York-centered dispute, and the public factors strongly favor transfer: the Petition burdens a busy District with the arbitrability of a New York lawsuit pleading claims under New York law against New York defendants, which turns on substantive analysis of New York law. Citi's contrary arguments that this Court is not that busy and knows more about the case because it has reviewed the transfer motion are unpersuasive.

Citi asks this Court to ignore these factors based on the incorrect argument that Citi could not have moved to compel arbitration in the pending SDNY case instead of burdening any District with a new action. Its argument depends on its claim that arbitration must take place in Texas. That is incorrect because while Carreon lived in Texas and sometimes worked from her home, she regularly commuted to work in New York where the claims arose. Thus, Carreon's "last Citi work location" was in New York, and the SDNY is an appropriate Court to resolve the

---

[1] *Carreon v. Citigroup Inc. et al.*, No. 1:26-cv-00660 (S.D.N.Y. Jan. 26, 2026).

Petition. But that argument is ultimately a red herring, as under Citi's unique arbitration policy, Carreon ***cannot be compelled to file an arbitration anywhere***. Citi's arbitration policy permits her only to notify Citi's HR of a dispute, after which Citi alone may file an arbitration. Any court could order Carreon to do that (though none will), and there is therefore no need to further burden this Court to seek relief the SDNY could grant.

Citi not only misconstrues the facts and law; it also audaciously relies on a case involving the same counsel on both sides, *Bradley v. Bank of America Corp.*, No. 1:25-cv-6980 (S.D.N.Y. 2025), in which a Texas resident sued in New York where, though venue was proper, the Bank of America arbitration agreement required arbitration to take place where Bradley worked in Texas, never in New York. There, Petitioner's counsel chose not to file a separate action in Texas but instead respected the first-filed action and moved in New York to compel arbitration and transfer to Texas—precisely what Citi should have done if it truly believed Carreon's case was a Texas dispute. Citi's decision to instead file this new lawsuit reveals that the facts of this case, unlike those in *Bradley*, support continued litigation in New York.

## ARGUMENT

### I. All Legal Authority Supports Applying the Transfer Statute to This Petition

Citi's response begins with the erroneous assertion that "Section 1404(a) does not apply to Citi's Petition to Compel" because the SDNY cannot hear a petition to compel arbitration in Texas. (Dkt. 16 at 12.) That is incorrect, regardless of the situs of arbitration. As explained in the motion, transfer is permitted anywhere a case "might have been brought." 28 U.S.C. § 1404(a). Under the Federal Arbitration Act ("FAA"), the Petition might have been brought in "any United States district court which, save for such agreement, would have jurisdiction under title 28 … of the subject matter of a suit arising out of the controversy between parties." 9 U.S.C. § 4. Citi

resides in the SDNY, making it a proper venue with jurisdiction over the subject matter of any federal-question or diversity suit against Citi (this case is both), 28 U.S.C. § 1391(b)(1), especially where it concerns sexual harassment and discrimination occurring in New York, *id.* § (b)(2). Citi does not contest jurisdiction in its response; all parties agree that the SDNY has jurisdiction over "the subject matter of the dispute." By both the FAA's and § 1404's plain terms, this Petition might have been brought in the SDNY and may be transferred there.

Citi's argument is thus not that it could not file in the SDNY, but that it might not obtain the relief it desires there. That is unpersuasive under both the law and the facts. On the law, Citi tellingly cites no authority to deny transfer because the transferee court might not compel arbitration in another district. Rather, Citi's caselaw demonstrates that courts in the SDNY routinely address the issue of arbitration outside their district, and in fact do not dismiss those petitions for lack of jurisdiction or improper venue. (*See, e.g.*, Dkt. 16 at 7 (citing *Law Offs. of Joseph L. Manson III v. Aoki*, No. 19-CV-04392, 2020 WL 767466 (S.D.N.Y. Jan. 3, 2020) (staying SDNY proceedings pending D.C. arbitration)).) As explained in the motion to transfer, the "Second Circuit has not decided" whether courts may compel arbitration outside the District, so the relief is not foreclosed in the SDNY. *Merida Cap. Partners III LP v. Fernane*, No. 25-cv-1235, 2025 WL 2531041, at *6 (S.D.N.Y. Sept. 3, 2025) (citations omitted).

On the facts, under Citi's unusual arbitration policy, ***Carreon cannot file an arbitration anywhere***, and therefore the site of the eventual arbitration does not limit which court can entertain the Petition. Citi employees are forbidden to initiate their own arbitrations under Citi's policy. Instead, an employee with a dispute, like Carreon, must notify Citi's HR department. After thirty days, if the dispute is not resolved, only Citi may then initiate arbitration "with the appropriate office." (Dkt. 14 at 14–15; Dkt. 2-1 at 11–12.) Citi can therefore petition the SDNY

for an order directing Carreon to initiate that arbitration procedure. 9 U.S.C. § 4. No court could compel her to file her own arbitration in any District "under such agreement." *Id.*

What's more, even if the SDNY orders that Carreon's case is arbitrable and concludes that when *Citi* files the arbitration it must be in Texas, the SDNY can stay the federal lawsuit under 9 U.S.C. § 3. Citi insists that a stay is not enough based on an offensive assumption that Respondent could violate that order, which would require a finding that the issues are "referable to arbitration," *id.*, by re-filing in New York state court. This argument is lamentable. Whatever Petitioners' counsel's disagreements with Respondent's counsel, the undersigned is an officer of the court who scrupulously obeys court orders. When deciding the transfer motion, this Court need not entertain the possibility that Respondent will violate a court order.

Finally, in a misguided attempt to bolster its argument that Section 1404 does not apply, Citi cites *Bradley v. Bank of America Corp.*, a case involving the same counsel as here. There, the plaintiff, who worked in an office in San Antonio, alleged federal claims for discrimination in Texas. *Bradley*, No. 1:25-cv-6980 (S.D.N.Y. Aug. 22, 2025), Dkt. 1. Though, as here, his employer was headquartered in New York, making the SDNY an appropriate venue, the SDNY granted the defendant's motion to transfer venue, in part because the "overwhelming majority of events and actions [the plaintiff] complains of allegedly occurred in San Antonio," and thus "many witnesses are in Texas." (Dkt. 16-22 at 4:9–11.) In addition, it was undisputed that the arbitration policy required that the arbitration, if any, be held in Texas. (*Id.* at 4:23–25.)

Carreon's case—alleging events and actions in New York that support New York claims exempted from arbitration by the EFAA and that, even arbitrable, would be arbitrated in New York—is factually distinct. Indeed, counsel for Citi tacitly acknowledge the differences between these cases by their conduct. Fresh off winning a transfer *Bradley*, counsel chose in this case to

circumvent the SDNY altogether, knowing that Citi almost certainly would not have met its burden to transfer Carreon's case from the SDNY to Texas.

Finally, Citi's related argument (at 8–9 n.2) that this Court should ignore the first-filed rule because this litigation could not have been brought in New York fails for the same reason: venue was and remains proper in the SDNY. The cases Citi cites illustrate the defects in its argument. For example, in *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018), the court ruled that transfer to a district with a first-filed case was improper "because, under the general venue statute, 28 U.S.C. § 1391, venue is not proper there." Here, the SDNY is where Citi "resides" and where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2). Because venue is proper in the SDNY, the first-filed rule applies.

## II. The Private-Interest Factors Favor Transfer

Under 28 U.S.C. 1404(a), courts consider "the convenience of parties and witnesses," including several private-interest factors. *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). Citi develops almost no argument in response to Carreon's discussion of these factors, dismissing them as irrelevant to the Court's analysis because the parties have "a forum-selection clause." (Dkt. 16 at 14–15.) But the parties here did not designate a specific forum for resolving these claims—unlike the authorities Citi cites. In any event, if this Court were to resolve the dispute about the proper forum for arbitration (and it need not), the correct forum is New York City.

To begin, here, unlike Citi's cases, the parties agreed to arbitrate only certain matters, excluding "disputes which by federal law are precluded from arbitration." (Dkt. 2-1 at 9.)[2] And

[2] Citi ignores this provision when it argues that the EFAA cannot apply because an earlier version of the arbitration policy predates the EFAA. Citi has always agreed to exclude disputes that are not legally arbitrable. (Dkt. 2-1 at 9.) In due course, Respondent will explain that the applicable policy is an amendment created after the EFAA (*id.* at 15, § 26), and Carreon's claims accrued post-EFAA. *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 91 (2d Cir. 2024).

for the subset of arbitrable cases under the parties' agreement, proceedings will occur in the ex-employee's "last Citi work location." (*Id.* at 12.) Thus, what Citi labels a "forum-selection clause" does not apply to Carreon's case, which is precluded from arbitration under the EFAA, and even if it applied here, a court must weigh evidence and make a factual determination about the location of Carreon's last Citi work location. Citi asks this Court to conduct these factual analyses despite a first-filed case in the SDNY that is currently primed to review these very same issues, with the benefit of local witnesses, records, and a robust body of caselaw regarding the EFAA and New York State and City law on claims of sexual harassment. (*See* Dkt. 14 at 16–20.)

Citi's authorities are far different. For example, the parties in *In re Rolls Royce Corp.*, 775 F.3d 671, 674 (5th Cir. 2014), contracted to litigate in Indiana, and the parties in *Matthews v. Tidewater, Inc.*, 108 F.4th 361, 365 (5th Cir. 2024) contracted to litigate in England. In neither matter was a party seeking to transfer venue to the location of a first-filed case where the court was in a superior position to resolve *whether* and *where* arbitration might occur.

**III. The Public-Interest Factors Favor Transfer**

As Carreon explained, the public-interest factors strongly favor transferring this Petition to the SDNY. (Dkt. 14 at 17–20.) Citi's short, undeveloped response is littered with errors.

At the outset, Citi cannot avoid the clear import of the public-interest factors: New York companies are asking a busier Texas Court to consider the substance of New York law to determine whether a New York lawsuit should be arbitrated. Citi's arguments that New York does not have a sufficient nexus to Carreon's claims overlooks the obvious point that her claims arose from conduct that took place in New York. Citi makes no effort to assert that a single Citi employee ever traveled to Austin, Texas, to meet with Respondent.

Citi's surface-level responses to the public-interest factors do not refute the strong public

interest New York has in this Petition. First, other than Citi's conclusory statement that "Respondent's reliance on court statistics is unavailing" because an extra sixty cases per judgeship is a significant difference in congestion, Citi does not dispute that this District has the third-most filings per judgeship in the nation, whereas the SDNY ranks 57th. (Dkt. 14 at 19–20.) Citi cannot wave those statistics away; "the administrative difficulties flowing from court congestion" favors transfer. *Clarke*, 94 F.4th at 508. Citi also contends that "nothing substantive has occurred" in the first-filed SDNY case, and that "this Court will have more familiarity with the facts of this case" because it is considering the motion to transfer and, Citi hopes, the Petition itself. (Dkt. 16 at 16.) But if familiarity with a transfer motion doomed transfer, no case could be transferred. And the Petition is not yet before this Court; it may (and should) be transferred. Fundamentally, both this case and the SDNY lawsuit have one substantive filing: the complaint in the SDNY, and the Petition here. Citi's response to the SDNY lawsuit is due one week from this Reply, very likely before this Court resolves this motion. *See Carreon v. Citigroup Inc. et al.*, No. 1:26-cv-00660 (S.D.N.Y. Jan. 26, 2026), Dkt. 7 (response deadline of April 7). In addition, Citi's comment that "this Court will need to resolve" Citi's Petition is simply wishful thinking. Either after transfer, or on a motion to stay under FAA § 3 that under any sensible procedure Respondent would anticipate Citi would file as a responsive pleading next week, the SDNY would resolve whether Carreon must arbitrate or is protected by the EFAA, and there would be nothing left for this Court to decide.

Citi next posits that New York lacks an interest in this Petition because it concerns only "*federal* law." (Dkt. 16 at 17.) Under any scenario, either this Court or the SDNY must address whether Carreon's New York claims constitute a "sexual harassment dispute," which is not arbitrable under the EFAA. Thus, Citi's Petition asks this Court to hold that Carreon cannot have

a "sexual harassment dispute" because she does not state a claim under New York law. (*See* Dkt. 4 at 10.) In the same breath as it tries to walk back its position that this Court should decide the merits of New York claims currently pending before the SDNY, it must again argue that "New York discrimination law does not apply to Respondent," still a substantive claim under New York law. (Dkt. 16 at 17.) Though incorrect, it reaffirms that the Petition requires analysis of New York law, supporting transfer. *See Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (2010) (holding New York discrimination law protects nonresidents who feel impact in New York).

## IV. After Transfer, Arbitration, if Any, Would be Held in New York, Not Texas

After this case is transferred to the SDNY, Citi can continue its attempt to compel arbitration, though it is foreclosed by the EFAA. Whether such a finding exempts Carreon's entire case is an issue that is currently pending before the Second Circuit Court of Appeals. *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 532–33 (S.D.N.Y. 2024), *appeal pending*, No. 24-3223 (2d Cir.). But even if Citi convinces the SDNY that any claims are arbitrable, that Court will direct arbitration in Carreon's "last Citi work location"—New York City.

Citi largely concedes Carreon's framing of how to interpret "Citi work location." It agrees that "the applicable 'work location'" is not wherever she might be performing work duties on a given day, but rather it is her "*Citi* work location." (Dkt. 16 at 10 (emphasis added).) It further agrees that the phrase "Citi work location … means the Citi office where an employee is expected to report." (*Id.*) Carreon has declared that following her promotion, she "was expected to work out of Citi's New York City office a minimum of two weeks per month." (Dkt. 14-1 ¶ 9.) She also averred that "[a]s Global Head, [she] did not work a single day out of a Texas Citi office." (*Id.* ¶ 19.) As her declaration attests, in her "last" Citi job as Global Head of Wealth Platforms and Experiences, she worked in New York City roughly two weeks per month, never

worked in another domestic office; supervised dozens of employees, most in New York, none in Texas; and reported to direct and skip-level supervisors in New York. (Dkt. 14-1 ¶¶ 8–12, 18.) Further, Citi routinely approved Carreon's expense reports for travel to New York to work, an argument Citi does not address. (*Id.* ¶ 20.) After her promotion, no Citi executive traveled to work or otherwise meet with her in Texas. (*Id.* ¶ 19.) Citi has not contradicted these statements.

Citi next claims that Carreon spent most of her time in Texas, not New York. At the outset, Citi principally emphasizes time during Carreon's "first," not "last" Citi position, in an irrelevant job she held during the COVID pandemic. Recognizing the impropriety of this move, Citi then pivots and claims that Carreon did not work enough time physically in New York when compared to the total calendar days since her promotion, as opposed to business days. Just as Citi executives who live in Connecticut are not part-time New York employees merely because they spend only five out of seven days a week in the office, neither is Carreon's time in New York diminished because she returned home for the weekends after her extended trips to work at Citi headquarters. Dickering over the denominator does not refute the core point that the only domestic office from which Carreon worked was in New York City, where she reported roughly two weeks of every month and supervised employees who worked out of the New York office.

Rather than argue for its preferred location based on this agreed-upon framing, Citi instead spills much ink and submits 22 exhibits proving that Carreon *lives* in Austin, a fact she has never disputed. (*See* Dkt. 14 at 2–4 (acknowledging that Carreon lives in Texas, worked primarily remotely before her promotion, then after promotion was expected two weeks out of every month in New York).) Evidence that Carreon lives in Texas does not establish her "last Citi work location" under the arbitration agreement. In fact, one such document that Citi cites (at 5, 16) is an email in which Carreon tells one of her New York supervisees that although she is

"based in Texas," she is "here [in her New York Citi office] this week through Friday." (Dkt. 16-11.) Moreover, these cherry-picked documents are not representative of all records of her work at Citi. If Respondent's motion is denied, Carreon would serve Citi with discovery requests to gather additional relevant documents to demonstrate that she consistently worked in New York.

Citi has also trawled social media and the depths of Carreon's Citi email inbox to discover that she represented that she is based in Austin on LinkedIn and in correspondence about state income taxes. (Dkt. 16 at 10–12.) Neither modifies the location of the Citi office where she was expected to report. Yet again overlooking the word "last" in "last Citi work location," Citi cites Carreon's correspondence about New York taxes *before* her promotion, during which there is no dispute that she spent substantially less time in New York. (*See, e.g.*, Dkt. 14-1 ¶ 3.) Even taken at face value, Carreon merely emphasized in those emails that she was "a resident of Austin, Texas," and that it was her "understanding … that you must work 184 consecutive days in New York to become taxable." (Dkt. 16-13 at 3; *see also* Dkt. 16-12 at 2.) Although Carreon was promoted after this email and therefore spent considerably more time in New York, she has never claimed to have spent more than half a year there without returning to Texas. "Last Citi work location" does not incorporate any state's tax laws. As to her LinkedIn, Citi cannot credibly argue that an employee may define her own "last Citi work location" for purposes of setting a venue for arbitration by simply listing a city on LinkedIn. The Court should reject these arguments and exhibits that do not clarify which court should decide arbitrability.

## CONCLUSION

The SDNY, containing Carreon's last Citi work location, and before which this dispute was already pending, is best suited to determine whether her New York sexual harassment claims qualify as a "sexual harassment dispute"; this Court should therefore transfer this case.

Date: March 31, 2026

Respectfully Submitted:

*/s/ Linda D. Friedman*

Linda D. Friedman

*Counsel for Respondent Julia Carreon*

Linda D. Friedman (*admitted pro hac vice*)
Stowell & Friedman, Ltd.
303 W. Madison, Suite 2600
Chicago, IL 60606
312.431.0888
lfriedman@sfltd.com

Ryan O. Estes (Bar No. 24120586)
Kaplan Law Firm, PLLC
2901 Bee Cave Rd., Suite G
Austin, TX 78746
512-814-7348
restes@kaplanlawtx.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31st, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record at their respective email addresses.

/s/ Linda D. Friedman
Linda D. Friedman